09-3471-pr
Bennett v. Miller

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 1st day of April, two thousand eleven.

PRESENT: DENNIS JACOBS,
          <u>Chief Judge</u>,
     PIERRE N. LEVAL,
     REENA RAGGI,
          <u>Circuit Judges</u>.

- - - - - - - - - - - - - - - - - - - -X

LARRY BENNETT,

     <u>Petitioner-Appellant</u>,

     -v.-                        09-3471-pr

DAVID MILLER, Superintendent, Eastern Correctional Facility, ANDREW M. CUOMO, New York State Attorney General,

     <u>Respondents-Appellees</u>.

- - - - - - - - - - - - - - - - - - - -X

1

**APPEARING FOR APPELLANT:** KYLE W. K. MOONEY (Jamie A. Levitt and Michael Gerard, on the brief), Morrison & Foerster, L.L.P., New York, NY.

**APPEARING FOR APPELLEES:** SHOLOM J. TWERSKY, Assistant District Attorney (Leonard Joblove, Assistant District Attorney, on the brief), for Charles J. Hynes, District Attorney for Kings County, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Townes, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Pursuant to a certificate of appealability, petitioner-appellant Larry Bennett appeals from the denial of his petition for habeas relief under 28 U.S.C. § 2254 by the United States District Court for the Eastern District of New York (Townes, J.). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

A state's resolution of a claim is entitled to deference under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") if it "was adjudicated on the merits in State court proceedings." See 28 U.S.C. § 2254(d). The Appellate Division, Second Department, affirmed Bennett's convictions for the counts at issue in this petition on the ground that they "either [we]re unpreserved for appellate review, without merit, or d[id] not require reversal." People v. Bennett, 785 N.Y.S.2d 526, 527 (2d Dep't 2004) (citation omitted). The New York Court of Appeals denied Bennett leave to appeal, rendering final the decision by the Second Department. 4 N.Y.3d 796 (2005). The Second Department's decision is entitled to AEDPA deference, because an "'either/or' decision is deemed to rest on the merits of the federal claim . . . because there is no plain statement to the contrary." Jimenez v. Walker, 458 F.3d 130, 146 (2d Cir. 2006).

2

In reviewing the merits, we consider whether the Second Department's rejection of Bennett's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." § 2254(d)(1). "[D]etermined by the Supreme Court" refers to "the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000).

[1]  Bennett argues that the admission of Ellis's in-court identification was an unreasonable application of Manson v. Brathwaite, 432 U.S. 98 (1977), and Neil v. Biggers, 409 U.S. 188 (1972).  The first inquiry is whether the identification procedure was "unnecessarily suggestive," Biggers, 409 U.S. at 198; the second, whether "under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Id. at 199.

The circumstances surrounding Ellis's identification were extremely suggestive.  Ellis never identified Bennett prior to trial; he twice failed to make an in-court identification while on the stand; and only after he watched from the galley when the prosecutor identified Bennett as the shooter did Ellis undertake to make an in-court identification.  These circumstances made it "all but inevitable that [Ellis] would identify [Bennett]." Foster v. California, 394 U.S. 440, 443 (1969).

"[R]eliability is the linchpin in determining the admissibility of identification testimony," Manson, 432 U.S. at 114; even an unduly suggestive identification may satisfy due process if it was nevertheless reliable.  The reliability factors in Biggers guide the inquiry, see Biggers, 409 U.S. at 199-200, even though they are not the only hallmarks of due process, see Brisco v. Ercole, 565 F.3d 80, 94 (2d Cir. 2009).  As a bouncer, Ellis had a good vantage point and a duty to be attentive; but these factors are outweighed by [1] the vague description of the young men he gave to officers on the night of the shooting, [2] the one-year gap between the shooting and the identification he made at trial, [3] his inability to make an identification during his first appearance on the stand, and [4] the "corrupting effect of the suggestive identification itself." Manson, 432 U.S. at 114.

3

However, any error from Ellis's identification was harmless because the identification did not have a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see Fry v. Pliler, 551 U.S. 112, 121-22 (2007). Ellis was not an eyewitness to the shootings, nor did he ultimately link Bennett to a firearm or the red van. Furthermore, the other evidence implicating Bennett was substantial, including testimony by three eyewitnesses who identified Bennett as the shooter at trial (two of whom had identified him shortly after the incident as well), significant discrepancies in Bennett's account of the evening (as set out in his two statements), and the discovery of Bennett's identification in the van in which the murder weapon was found.

**[2]** Bennett argues that the prosecution's knowing use of the false blood-stain evidence was contrary to, or an unreasonable application of, Miller v. Pate, 386 U.S. 1 (1967). In Miller, habeas was granted to a man convicted of the murder of an eight-year old girl (who died as a result of a brutal sexual attack), because the prosecution had made "consistent and repeated misrepresentation[s]" that underwear attributed to the defendant was stained with blood that matched the victim's blood type notwithstanding the prosecution's knowledge from a chemical microanalysis that the stains were paint, not blood. Id. at 5-6.

Here, the prosecutor's behavior was egregious; he is no longer employed by the Kings County District Attorney's office. Notwithstanding his misconduct, habeas relief is warranted only if there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." Drake v. Portuondo, 553 F.3d 230, 241 (2d Cir. 2009) (internal quotation marks omitted). Upon careful review, we see no reasonable likelihood that the prosecutor's misconduct affected the jury's verdict. First, the stipulation read to the jury--acknowledging that the stain was not blood--was clear, concise, and easy to follow. Second, the court provided a curative instruction (which operated as a rebuke) immediately following the improper summation argument.[*] Third, the blood evidence was both

---

[*] We need not consider whether this instruction might have been more effective if worded differently because no such request was made at trial.

4

cumulative and collateral: The prosecution was not required to prove that Bennett had been in the van; and, in any event, the recovery of Bennett's identification (and the testimony by Christopher Martin) connected him to the van.

We have considered Bennett's other arguments and conclude that they lack merit.  For the foregoing reasons, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK